# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1643

_____

| | | |
|---|---|---|
| Lanita Cherry, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Ritenour School District, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: November 17, 2003

Filed: March 17, 2004

_____

Before LOKEN, Chief Judge, McMILLIAN, BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Lanita Cherry appeals from the district court's[1] grant of summary judgment in favor of Ritenour School District on Cherry's claims of race discrimination and retaliation under Title VII. The district court held that Cherry failed to establish a prima facie case of discrimination and, furthermore, that Cherry did not prove that the proffered reason for her contract nonrenewal was a pretext for intentional race discrimination. We affirm the decision of the district court.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

## I. BACKGROUND

We recite the facts in the light most favorable to Cherry and draw all justifiable inferences in her favor.  Putman v. Unity Health Sys., 348 F.3d 732, 733 (8th Cir. 2003).

The School District employed Cherry, an African American, as a counselor during the 1999-2000 school year and most of the 2000-2001 school year.  During the 2000-2001 school year, Assistant Principal McKinley and Principal Wildhaber counseled Cherry on several occasions concerning various aspects of her job performance.  These counseling sessions began in October 2000 when Assistant Principal McKinley counseled Cherry about completing students' special education referrals.  Following that meeting, Principal Wildhaber shared concerns with Cherry including Cherry's practice of keeping her door closed, her unwillingness to assist during after-school hours, Cherry's failure to use her computer for counselor functions, her sub-par performance in relation to what Principal Wildhaber had previously experienced with other counselors, and complaints from other staff members about Cherry's performance.

On December 4, 2000, Cherry received a Formative Data Form, which cited Cherry's lack of organization regarding the special education program and concerns about her lack of availability.  Then on December 5, 2000, Cherry received a Professional Improvement Plan, which directed her to better organize and coordinate special education services.  Principal Wildhaber personally met with Cherry to discuss the concerns raised in these documents.

Principal Wildhaber counseled Cherry again on March 8, 2001, providing Cherry another Formative Data Form and Professional Improvement Plan.  This Formative Data Form cited Cherry's lack of coordination and failure to schedule certain meetings, failure to utilize existing computer programs, and failure to work

with administration as a team player. The March Professional Improvement Plan was identified as "job threatening," focusing on Cherry's failure to maintain positive interpersonal relationships with school personnel. On March 13, 2001, Principal Wildhaber gave Cherry her performance evaluation, which marked Cherry as "needs improvement" in the area of "organizes and coordinates Special Education services," and as "does not meet expectations" in the area of "demonstrates positive interpersonal relationships with district personnel to accomplish the district's vision, mission, and goals." This evaluation recommended that Cherry's employment not be renewed for the next school year. On March 26, 2001, the School District notified Cherry that the Board of Education voted not to re-employ her for the 2001-2002 school year.

Cherry responded to many of the suggestions and concerns raised throughout the school year by creating flow charts as requested, and by attempting to set up a parent support group. During the 2000-2001 school year, Cherry also contacted Gilbert Balderama, the union representative, about the various counseling sessions and feedback Cherry had received from Assistant Principal McKinley and Principal Wildhaber. Balderama met with Principal Wildhaber and Cherry to review Wildhaber's expectations and concerns. Balderama testified that it seemed as if the administration's expectations of Cherry changed each time Cherry did what the administration asked. Balderama also provided Cherry with the appropriate paperwork to file a claim with the Equal Employment Opportunity Commission after Cherry indicated that the administration was discriminating against her.

As evidence of Wildhaber's animosity towards her, Cherry provided a letter from a parent. That letter described an incident when Principal Wildhaber rudely interrupted a meeting between the parent and Cherry, demanded that Cherry monitor recess, and later interrupted a second time, and harshly commented about Cherry's inability to assist. In substance, the parent wrote that she was disappointed with the level of professionalism Principal Wildhaber demonstrated that day. Additionally,

Cherry stated in her affidavit that because she is black and both McKinley and Wildhaber are white, she was criticized more harshly and treated differently. As further proof of her demonstrated abilities, Cherry pointed to a March 15, 2001, letter written by a school psychologist, which stated that Cherry was a dedicated counselor who worked very hard to complete her responsibilities.

## II.     DISCUSSION

We review the district court's grant of summary judgment de novo. Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 613 (8th Cir. 2003). "We will uphold the judgment if the evidence, 'viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" Id. (quoting Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003)).

As the district court did in this case, we will apply the McDonnell Douglas burden-shifting approach to Cherry's claim. The McDonnell Douglas approach was developed to assess claims that are based on collateral evidence and brought under section 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141-42 (2000).

Under the McDonnell Douglas approach, the plaintiff must establish a factual presumption of intentional discrimination. Id. at 142. In Cherry's case, that required evidence (either direct or circumstantial) that: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination. Taylor v. Southwestern Bell Tel. Co., 251 F.3d 735, 740 (8th Cir. 2001). If Cherry satisfies this burden, the School District must articulate a legitimate, nondiscriminatory reason for its employment action. Reeves, 530 U.S. at 142. The burden on the School District is one of production, not persuasion. Id. If

the School District articulates such a reason, the "presumption of intentional discrimination disappears, but [Cherry] can still prove disparate treatment by, for instance, offering [direct or circumstantial] evidence demonstrating that [the School District's] explanation is pretextual." Raytheon Co. v. Hernandez, 124 S. Ct. 513, 518 n.3 (2003). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Both parties proceed under the McDonnell Douglas burden-shifting framework. In evaluating Cherry's claim under the McDonnell Douglas approach, the district court held that Cherry (1) was a member of a protected group, (2) suffered an adverse employment action, and (3) sufficiently raised an inference of discrimination to satisfy the fourth element of her discrimination claim. But, the district court determined that Cherry failed to demonstrate that she was meeting the School District's legitimate expectations during the 2000-2001 school year, thus failing to meet her burden of establishing a "prima facie case." Although the district court did not assume in the alternative that Cherry had made a sufficient showing under the McDonnell Douglas structure, it did discuss the School District's articulation of a nondiscriminatory reason for Cherry's nonrenewal. After reviewing the record in the light most favorable to Cherry and drawing all reasonable inferences in her favor, we agree with this latter approach. Thus, we assume for purposes of this appeal that Cherry carried her burden under the requirements of McDonnell Douglas.

After presuming that Cherry established a McDonnell Douglas case, the district court properly recognized that the School District offered a legitimate, nondiscriminatory reason for Cherry's nonrenewal–she did not improve in the specific areas in which she was counseled. As previously outlined, Principal Wildhaber discussed several specific areas of improvement with Cherry beginning in October 2000, including, among other things, Cherry's practice of keeping her door closed, her unwillingness to assist after school, and her failure to use her computer for counselor

functions. This performance counseling continued through March 2001 with written evaluations citing specific areas of needed improvement, many of which were repeated each session.

Having articulated a legitimate, nondiscriminatory reason for Cherry's nonrenewal, the inquiry now before us is whether there was sufficient evidence, either direct or circumstantial, from which a jury could conclude that the School District made its employment decision based on Cherry's race despite the School District's proffered explanation. "[I]t is possible for strong evidence of a prima facie case to . . . present a factual issue on pretext." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). "In many cases the employer's proffered reason is that the employee was not performing the job satisfactorily, which is simply the negative of one of the elements of the prima facie case." Erickson v. Farmland Indus., Inc., 271 F.3d 718, 726 (8th Cir. 2001). If the employee has produced evidence that she is performing satisfactorily, there may be sufficient evidentiary conflict to create a triable issue of fact. Such a showing, however, does not necessarily create a genuine issue of material fact because the presumptive case requires only a minimal showing, while a showing of pretext requires more substantial evidence. Id. at 726-27. At any rate, Cherry's evidence supporting her prima facie case is not so strong as to allow a reasonable factfinder to conclude the School District's articulated reason was a pretext for intentional discrimination.

As here, "'[p]robably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment.'" Id. (quoting 1 Lex K. Larson, *Employment Discrimination* § 8.04 (2d ed. 2001)). "The test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." EEOC v. Kohler Co., 335 F.3d 766, 775 (8th Cir. 2003) (quoting Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been

subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. at 776.

Cherry has failed to identify any specific staff members who were similarly situated yet were treated more favorably. While she generally asserts that other individuals had particular similarities in certain instances, she does not meet the rigorous standard of proving how these individuals were sufficiently analogous to her situation. For example, Cherry identifies a certain Caucasian teacher by name, and claims that other Caucasian teachers kept their doors closed without rebuke and were not given two Professional Development Plans with additional expectations. But, she does not establish how these individuals were otherwise comparable . Cherry had the burden of demonstrating by a preponderance of the evidence that there were individuals similarly situated in all relevant aspects. Id. And, unsubstantiated allegations are insufficient.

Cherry offers no evidence that she did, in fact, assist during after school hours, utilize the computer program available to her, and make herself more accessible. In an affidavit, Cherry alleges that she created flow charts as suggested and attempted, without any help from Principal Wildhaber, to set up a parent support group as requested. However, standing alone these assertions are insufficient to prove pretext.

Finally, Cherry's asseverations that African American parents, students, and two former secretaries had declared that Principal Wildhaber discriminated against them or their children are not on point and are otherwise wholly insufficient. In addition, these statements are inadmissible hearsay and cannot be used to avoid summary judgment. Fed. R. Evid. 801(c); Fed. R. Civ. P. 56(e).

In sum, there are no facts in this record that support the conclusion that the School District's stated reason for not renewing Cherry's contract was a pretext for

intentional race discrimination.  Accordingly, the School District is entitled to summary judgment under the <u>McDonnell Douglas</u> paradigm.

## III.   CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the School District.

_____