# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2060

_____

Lavada A. Box,                *
                              *

          Appellant,      *

                              *   Appeal from the United States
    v.                      *   District Court for the
                              *   Western District of Missouri.

Anthony J. Principi, Secretary of   *
Department of Veterans Affairs;   *
Department of Veterans Affairs,   *
                              *

          Appellees.      *

_____

Submitted: January 13, 2006
Filed: March 31, 2006

_____

Before SMITH and HANSEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

SMITH, Circuit Judge.

Lavada A. Box, an African-American female, brought suit against her former employer, the Department of Veterans Affairs ("VA"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

2000e et seq. The district court[2] granted the VA's motion for summary judgment, finding that Box failed to establish a prima facie case of discrimination or retaliation. We affirm.

## I. *Background*

Box was hired by the Kansas City VA Medical Center in 1986 as a GS-3 medical clerk/secretary. In that same year, Box was promoted to a GS-4 clerk/typist. In 1987, Box was promoted to a GS-5 Procurement Clerk in the Consolidated Contracting Section. In 1989, Box was transferred to the Contracting Section at the VA and promoted to a GS-5/6 Purchasing Agent. In 1994, Box was promoted to a GS-7/9/11 Contract Specialist, which was a developmental position. While in this position, Box was promoted to a GS-11 Program Specialist. When Box left the VA in 2001, she was a Program Administrator for the prosthetics treatment center/administrative office.

As a Contract Specialist, Box negotiated, entered into contracts, and processed contracts for the VA. Box had "warrant" authority, which authorized her to obligate government funds for the VA. The Contracting Section at the Kansas City VA Medical Center had two Contract Specialists, Box and Charlene Webster. Another individual, Charles Marsden, was in training for the position of Contract Specialist. Box was the only African-American Contract Specialist for the Kansas City VA Medical Center.

Box argues that the VA assigned her to work primarily on service-type contracts and nursing home contracts, which are not as complex or detail oriented as construction contracts. Box alleges that the VA's failure to assign her the more complex contracts hindered her career development, given the perishable nature of

---

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

-2-

the necessary skills. Further, Box claims that the VA intended to stifle her job progress by continually assigning complex contracts to other white Contract Specialists, including those less qualified than Box. Box states that the VA's actions ultimately set her up for failure in her career, as well as in her future employment with the VA as a Contract Administrator. Specifically, Box received her first construction contract after 13 years employment. She states that she had an extremely difficult time completing this task because of her lack of prior experience with complex assignments. Thereafter, Box's supervisor gave her multiple assignments that he knew she had previous problems with, without giving her any assistance or direction.

Box concedes that she was given 200 hours of formal training on how to perform the duties of a Contract Specialist. However, Box asserts that the skills necessary to work on more complex contracts diminished because she did not have an opportunity to use them. Moreover, Box alleges that she was not allowed to reacquire those skills through additional training, despite her requests. Box admits that there were meetings and other opportunities for training on complex contracts; however, those meetings were in addition to her current job responsibilities, and Box claims that because the administration would not reduce her work responsibilities, she was unable to regularly attend those training meetings.

Box also claims that she was denied annual leave on January 2, 1998, in retaliation for her previous activity with the Equal Employment Opportunity Commission ("EEOC").[3] The VA had an unwritten leave policy based on seniority that required at least one Contract Specialist to work each work day. If both Contract Specialists asked for the same day off, the VA allowed the one with more seniority to take leave. Box requested leave for December 24 and 31, 1997, and January 2, 1998. The VA granted Box's requested leave for December 24 and 31, but denied

---

[3]Box's previous EEOC activity stemmed from a 1996 incident when she refused to complete an assignment.

leave for January 2. Apparently, Charlene Webster, the other Contract Specialist with more seniority, also requested leave for January 2, and received it under the unwritten leave policy. Box alleges that the unwritten leave policy did not apply equally to all people and for all circumstances. More specifically, Box urges that the VA did not strictly enforce the unwritten leave policy for the white Contract Specialists, but strictly enforced it against her. The VA asserts that Box was not damaged because she took a sick day on January 2, 1998. In response, Box states that she would have preferred to have voluntarily taken the leave day and reserved her sick time in case of emergency.

In 1998, the VA relocated all of the Contract Specialist positions in Kansas City to Leavenworth, Kansas. Box decided to remain in Kansas City and did not apply for any other permanent position there until late 1998. The VA temporarily assigned Box to a Contract Administrator position at the same grade, pay, and benefits. Box alleges that Chuck Marsden, the Contract Specialist trainee, was given preferential treatment when he was allowed to remain in his position as a Contract Specialist in Kansas City until he received another position. Box also alleges that the VA retaliated against her for her EEOC activities by assigning her to the Contract Administrator position.

Also, in 1998, Box went to her supervisor and requested a copy of the Supervisory Contract Specialist position description. When Box made this request, she asserts that her supervisor, Mr. Henning, stated that she was "only making things more difficult for herself." He did not give her the position description. The VA responds that Henning simply did not have a copy of the position description and asked other VA officials to provide Box with the description.

In March 1998, Box filed a formal EEOC complaint, alleging that she was harassed when the VA (1) denied her request for annual leave on January 2, 1998, (2) denied her request for formal training, and (3) assigned her duties that she had not

been trained to complete. In August 1998, Box amended her original EEOC complaint to include claims that (1) she was discriminated against based on her race and in retaliation for her prior EEOC claim when she was detailed to a Contract Administrator position on May 8, 1998, and (2) when the VA Director, Charles Henning, refused to give her the position description for Chief of Purchasing and Contracting on May 20, 1998. In November 1998, Box filed another EEOC complaint alleging that she was assigned purchasing duties that were not listed in her position description.

After exhausting her administrative remedies, Box filed the instant action, alleging race discrimination and retaliation in violation of Title VII. The district court granted summary judgment in favor of the VA and dismissed Box's complaint in its entirety. Box timely appealed.

## II. *Discussion*

Box asserts that the district court erred in granting the VA's motion for summary judgment. First, she states the VA favored white employees by assigning them more complex contracts while delegating the simpler service and nursing home contracts to minority employees. Second, she alleges the VA retaliated against her for filing an EEOC complaint.

Box contends the VA discriminated or retaliated through: (1) denial of training; (2) the manner in which contracts were assigned, both type of contract and volume of contracts; (3) denial of her request for annual leave on January 2, 1998; (4) reassignment to the position of Contract Administrator; and (5) failure to provide a requested position description. Box states that she can show an adverse employment action, and that the failure to present direct evidence of race discrimination or retaliation does not warrant dismissal of her claims. Therefore, Box urges that the district court erred in finding that she was unable to establish a prima facie case.

The VA responds by stating that Box failed to establish a prima facie case of race discrimination and retaliation because she failed to show that she suffered an adverse employment action. The VA states that Box received over 200 hours of training to work as a Contract Specialist. Box was only denied a request for training on one occasion, and that was because of a lack of agency funding. Box did not make another request. Also, the VA states that Box's dissatisfaction with her work assignments does not give rise to an adverse employment action. Lastly, Box points to no interruption or interference with her job associated with the delay in providing her with a job description or the denial of one of her three requested annual leave days.

"We review de novo a district court decision granting a motion for summary judgment, using the same standard as the district court and construing the record in the light most favorable to . . . the nonmoving party. Summary judgment is appropriate only if the evidence establishes that there exists no genuine issue of material fact and that the moving party [] is entitled to judgment as a matter of law." *Johnson v. AT&T Corp.*, 422 F.3d 756, 760 (8th Cir. 2005) (internal citations omitted).

In order to establish a prima facie case of race discrimination, Box must show the following: (1) she is a member of a protected group; (2) she was meeting the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently. *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003). In order to show a prima facie case of retaliation, Box must show the following: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 502 (8th Cir. 2005). The district court held that Box was unable to show an adverse

employment action, and thus, she was unable to make a prima facie case of discrimination or retaliation. We agree.

"A materially adverse action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' There must be a material change in employment status–a reduction in title, salary, or benefits." *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1042 (8th Cir. 2005) (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)) (internal citation omitted). Box did not experience a change in salary or benefits. Box did experience a title change from Contract Specialist to Contract Administrator; however, this title change resulted from the transfer of all Contract Specialists to the VA in Leavenworth, Kansas, and not from any action directed towards Box. Box was not willing to relocate, and the VA, in an attempt to work with Box, temporarily assigned her to another position with substantially similar job responsibilities with the same pay and grade. Because there was no reduction in pay, benefits, or status, Box's change in title fails to give rise to an adverse employment action. *See Curby v. Solutia, Inc.*, 351 F.3d 868, 873–74 (8th Cir. 2003) (holding that the plaintiff's change in position did not constitute an adverse employment action because there was no reduction in pay or benefits).

In addition, "[a]n employer's denial of an employee's request for training is not, without more, an adverse employment action. Nor does the record permit an inference that [the appellant's] race was a factor in this training dispute." *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004). In *Griffith*, the plaintiff believed that his firefighting skills had deteriorated during a leave of absence. *Id*. The plaintiff asked for additional training. *Id*. His employer refused his request, and he alleged racial discrimination. *Id*. We held that his claim was without merit because the employer's denial of his training request was not an adverse employment action. *Id*. Here, as in *Griffith*, the record shows only one documented request for additional training by Box. Furthermore, it is undisputed that Box received 200 hours of training for the

Contract Specialist position during her employment. Viewing the record in the light most favorable to Box, we agree with the district court that she could not show an adverse employment action.

Box's additional claims regarding her denial of annual leave on January 2, 1998, and her supervisor's alleged failure to provide her with a job description also fall short of showing an adverse employment action. Neither of these events caused Box to suffer a material change in employment resulting in an adverse employment action.

## III. *Conclusion*

For the reason stated above, we affirm the district court's grant of summary judgment in favor of the VA.

_____