# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4147

_____

| | | |
|---|---|---|
| Billeigh H. Riser, Jr., | * | |
| | * | |
| Appellant, | * | Appeal from the United |
| | * | States District Court for |
| v. | * | the District of Minnesota. |
| | * | |
| Target Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 19, 2006
Filed: August 17, 2006

_____

Before MURPHY, BEAM, BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Billeigh Riser, Jr., a black male, brought suit against his former employer, Target Corporation, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Minnesota Human Rights Act (MHRA). The district court[1] granted Target's motion for summary judgment, determining that Riser was unable to demonstrate that he met Target's legitimate expectations of employment or that he was terminated in circumstances that give rise to an inference of unlawful discrimination. He was thus unable to establish

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

a prima facie case under the relevant statutes. The court further held that even if Riser could set forth a prima facie case, he could not show that Target's legitimate and nondiscriminatory reasons for terminating him were pretext. Riser appeals. We affirm.

## I.    BACKGROUND

In 2001, Target hired Riser as an Executive Team Lead In Training (ETL–IT). Riser worked the overnight shift at Target's Apple Valley location. He completed one week of business training at a different Target location along with three other new-hires before he began his on-the-job training in Apple Valley. His duties as an overnight ETL at Target included unloading merchandise trucks and shelving the items in the warehouse, facilitating the stocking of store shelves by hourly employees, reorganizing the stock room, and stocking store shelves himself.

Three other ETLs worked the overnight shift with Riser in Apple Valley. All three of the other ETLs were white. Indeed, Riser was the only black ETL working any shift at the Apple Valley store. These three co-workers, along with Craig Rothfolk, the director of Riser's business training program, and Chris Simon, the store manager (STL) at the Apple Valley location, all monitored Riser's progress during Riser's initial ninety-day probationary period. At the end of Riser's probationary period, Target fired Riser because he was doing a poor job. Riser had a low number of "pulls" (a number that reflects pieces of merchandise pulled from the stockroom to replenish store shelves), failed to conduct "huddles" (the nightly staff meeting), and did not answer overhead phone calls. Through deposition testimony, Target claims that Riser had the lowest "pulls" of any ETL-IT they recalled.

Riser, on the other hand, claims that he was actually fired because he was black and that Target never gave him any supervisory feedback to alert him to the fact that he was failing to meet certain expectations. He claims that because they failed to tell

him exactly what to do, he cannot be held responsible for failing to perform at a certain level.

On appeal, Riser argues that the district court blindly accepted Target's assertions that Riser was failing to meet its standards without producing any objective evidence of the alleged standards that Riser failed to meet. He claims the district court failed to apply the appropriate summary judgment standard when it viewed the evidence.

## II. DISCUSSION

This court reviews the grant of summary judgment de novo, viewing the facts most favorably to the nonmoving party. Canady v. Wal-Mart Stores, Inc., 440 F.3d 1031, 1034 (8th Cir. 2006). "[S]ummary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "We must affirm the grant of summary judgment on a claim if any essential element of [Riser's] prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir. 2005).

Title VII prohibits discrimination against an employee with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2(a)(1). Because Riser does not present direct evidence of discrimination, this court analyzes the case under the burden-shifting standard in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Under McDonnell Douglas, Riser has the initial burden of establishing a prima facie case of discrimination by showing that: 1) he is a member of a protected group; 2) he was meeting Target's legitimate expectations; 3) he was discharged; and 4) the

discharge occurred in circumstances that give rise to an inference of unlawful discrimination.[2]  Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004). If Riser establishes a prima facie case, Target must articulate a legitimate, nondiscriminatory reason for Riser's discharge. Id. Riser must then demonstrate that the nondiscriminatory reason offered by Target was really a pretext for racial discrimination.  Id.

Riser claims that the district court erred in granting summary judgment because it did not have any performance standards on which to base its decision and it took Target's version of the facts as true, contrary to the standard required at this stage of the litigation.  Riser fails on appeal, however, because even if we presume he established a prima facie case, he has shown nothing to establish that Target was likely motivated by a discriminatory reason or that Target's explanation was unworthy of credence. Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1108 (8th Cir. 1998). Stated simply, Riser argues that the reasons Target gives for his failings as an employee were not expectations clearly or specifically articulated to him during his employment and the real reason he was fired was because he was black.  But generally it is not this court's disposition to pass judgment on the particular training programs and management styles of employers.  Even if more direction would have been preferable, Target's failure to inform Riser of what was expected of him is not evidence of discriminatory animus.  Id.

The parties have spent a great deal of time in briefing and at oral argument, disagreeing about whether Riser established a prima facie case under the McDonnell Douglas burden-shifting framework, especially whether it is Riser's burden at the second step to prove that he was merely "qualified for the job" or whether he met the more (seemingly) onerous burden of proving that he "met Target's legitimate

---

[2]We apply the same standard for both Title VII and MHRA claims.  Pope v. ESA Servs., Inc., 406 F.3d 1001, 1006 (8th Cir. 2005).

-4-

expectations." See, e.g., Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (articulating plaintiff's burden at step two as "she was meeting the legitimate expectations of her employer"); Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir. 2005) (articulating plaintiff's burden at step two as "she was qualified for her position"). However, even assuming that there is a distinction with a difference between the two articulations, and the "qualified for the job"–articulation at the second step is indeed a less onerous standard, as Riser contends, we need not devote extensive analysis to the subject here. Rather, we must see the forest through the trees. Id. at 856 (Colloton, J. concurring).

"The prima facie case method established in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic," and "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (internal quotation omitted). Thus, we need not indulge the parties' disputes about which material facts are in dispute or whether Riser met his burden in establishing a prima facie case under McDonnell Douglas regardless of the "threshold" we have set for such proof. Rodgers, 417 F.3d at 851-53. Even assuming all of the disputed facts are material, and that Riser has established a prima facie case, Riser falls short. Riser has not generated a genuine issue for trial on the "ultimate question of discrimination *vel non*," U.S. Postal, 460 U.S. at 714, and that is enough to resolve this appeal.

Target asserts that it discharged Riser because of his inadequate performance at the Apple Valley store. Specifically, its legitimate nondiscriminatory reasons for Riser's discharge were that he failed to conduct a sufficient number of huddles, failed to answer the phone, and was deficient in the number of pulls he completed. Riser challenges each of the reasons given by Target, pointing out that even if the productivity measures of his performance provided by Target are accurate and equally

applied to all employees, which he does not concede,[3] these deficiencies were not communicated to him on any evaluation form nor did Target convey these specific standards of performance to him by any other means during his employment. Basically, he claims that Target did not articulate its expectations specifically enough to him. He rotely performed the work he was directed to do and he claims that was sufficient to show that he should have been retained.

However, the fact that Target might not have specifically set forth each task it was using to measure the competency demonstrated by Riser as an ETL-IT, does not carry the day for Riser in creating a reasonable inference that race was a determinative factor in his termination. See Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1334 (8th Cir. 1996). Again, managers are expected to demonstrate a high level of independence and initiative and although Riser may have felt that Target's approach was inappropriate, and that more specificity would have been preferable, an employer's "failure to inform an employee of what is expected of [him] is not evidence of discriminatory animus." Rose-Maston, 133 F.3d at 1108. While Riser may have some concerns about Target's management style, he does not have a Title VII claim. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.")

---

[3]As to his low number of pulls, Riser asserts that he worked a majority of his time in the shipping area unloading cargo from delivery trucks and when he did ultimately pull items, they were large items such as bags of dog food or furniture that would result in a lower pull number. Riser produced evidence that he had in fact performed "at least" four huddles during his ninety-day learning period and claims that Target never stated its expectations to Riser regarding the number of huddles it expected him to perform.

A second avenue Riser traverses in an attempt to prove pretext is to demonstrate that he was treated less favorably than similarly situated employees outside of his protected group. He claims that similarly situated employees were not held to the same standard. Here, though, Riser also falls short because he has failed to show that he was similarly situated to any of these white employees. He must show that he and the employees outside of his protected group were similarly situated in all relevant respects. Rodgers, 417 F.3d at 853. "We have equated the phrase 'similarly situated in all relevant respects' with the statement that '[e]mployees are similarly situated when they are involved in or accused of the same offense and are disciplined in different ways.'" Id. at 856 (Colloton, J., concurring) (quoting Wheeler v. Aventis Pharm., 360 F.3d 853, 858 (8th Cir. 2004)) (alteration in original).

Riser fails to demonstrate that the comparators were similarly situated in all *relevant* respects. In fact, the others are quite *dis*similar. Regardless of Target's failure to produce particular productivity reports on him for certain periods during Riser's employment as well as those on the employees discussed by Riser, including his fellow ETLs at Apple Valley and the ETL-ITs from his business college class working in other locations, the duties of those individuals varied from his. As to the other ETL-ITs, each was working at other Target locations, working different shifts, with different management and job duties. And it suffices to say that the other ETLs at Apple Valley were not similarly situated because they were not trainees, were not cited for the same shortcomings as Riser and would have been held to different standards. Additionally, Elizabeth Brown, an ETL-IT discussed by Riser, worked in an entirely different store in a different position on a different shift.

At any rate, Target *did* produce evidence showing that Riser's productivity was lacking in particular, measurable areas. Riser has not "eliminate[d] the most common nondiscriminatory reasons" for Target's action, and the evidence does not justify the legal presumption that Target's decision to terminate Riser was "more likely than not

based on the consideration of impermissible factors."  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).

## III.    CONCLUSION

For the reasons stated herein, we affirm.

_____