NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0677n.06

No. 10-3559

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 26, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| CLIFFORD LITTON, | ) |
| | ) |
| *Plaintiff-Appellee*, | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) |
| | ) |
| TALAWANDA SCHOOL DISTRICT, | ) O P I N I O N |
| | ) |
| *Defendant-Appellant*. | ) |

BEFORE:    BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

COLE, Circuit Judge.  Plaintiff-Appellee Clifford Litton, an African-American custodian working for Defendant-Appellant Talawanda School District ("Talawanda"), sued Talawanda for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, among other claims.  The jury returned a special verdict finding that Litton had not suffered an adverse employment action, but that race had been a motivating factor behind Tawalanda's actions, and awarded Litton damages.  The district court entered judgment for Litton, reasoning that precedent prevented the court from revisiting the prima facie case after a full trial on the merits.  Talawanda appeals, arguing that Litton's failure to make out his prima facie case is dispositive, requiring the district court to grant judgment as a matter of law in its favor.  We disagree and AFFIRM.

I.  BACKGROUND

Sixteen years into Litton's tenure as head custodian at Talawanda High School ("THS"), the Talawanda School District ("Talawanda") restructured its custodial division.  As part of this restructuring, it stripped Litton of his title as head custodian and transferred him to Talawanda Middle School ("TMS"), telling Litton, the only African-American employee in the facilities department, that he no longer "fit in" at the high school.  *Litton v. Talawanda School Dist.*, No. C-1-07-027, 2010 WL 1257576, at *5 (S.D. Ohio March 31, 2010).  Seeking to return to THS, Litton applied for an open groundskeeper position at the high school.  Despite being the most senior applicant, his request was denied.  Next, Litton requested to transfer into an open custodial position at THS.  Although he was again the most senior applicant, Litton's request was denied.

Litton brought suit against Talawanda, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, and Ohio law; age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Ohio law; and breach of Ohio public policy.  *Litton*, 2010 WL 1257576, at *1. The district court granted summary judgment in favor of Talawanda on several claims.  The parties thereupon proceeded to trial on (1) the age discrimination claim, for the denial of the groundskeeper position, and (2) the race discrimination claim, for the transfer to TMS and denial of Litton's request to transfer back to his previous position at THS.

At the close of Litton's case-in-chief, Talawanda moved for judgment as a matter of law, arguing that Litton had not proved its prima facie case.  The court did not rule on the motion, but took it "under advisement," and the trial continued.  At the end of the trial, the jury returned a special

verdict, answering specific questions about whether Litton's age motivated the denial of the groundskeeper position, whether the transfer to TMS and denial of a return to THS constituted adverse employment actions, and whether race was a motivating factor in Talawanda's decision to transfer Litton to TMS or to deny his request to transfer back to THS. The special verdict form instructed the jury to calculate damages if it found that age or race was a motivating factor in the relevant employment actions. The jury found that Litton's transfer to TMS and inability to transfer back to THS did not constitute adverse employment actions, but that race was a motivating factor in both these decisions. The jury awarded Litton $50,000 in compensatory damages, but no back or front pay. It did not find age discrimination.

Upon receiving the verdict, each party moved for judgment in its favor. Talawanda moved for judgment as a matter of law, arguing that the jury's finding that Litton had failed to prove an element of his prima facie case required it to find no unlawful discrimination. Litton moved for an entry of judgment in his favor because the jury had found unlawful discrimination and awarded damages to him. Following briefing, the district court entered judgment for Litton. *See Litton v. Talawanda Sch. Dist.*, No. C-1-07-027, 2010 WL 1257576 (S.D. Ohio, Mar. 31, 2010). Talawanda appeals.

## II. ANALYSIS

*A. Standard of review*

The grant or denial of a motion for judgment as a matter of law is reviewed de novo. *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 794 (6th Cir. 2004) (en banc). The court reviews the entire record "in the light most favorable to the nonmoving party." *Id.* The court should affirm

the jury verdict unless there is "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." *Id.* (quoting Fed. R. Civ. P. 50(a)).

B.  *Title VII and Prima Facie Matters*

Title VII of the Civil Rights Act of 1964 prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2 (2010).  "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Tisdale v. Federal Express Corp.*, 415 F.3d 516, 529 (6th Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000)).  A plaintiff may succeed in his Title VII claim "by persuading the court that a discriminatory reason more likely motivated the employer . . . ." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

In disparate treatment cases lacking direct evidence of discrimination, we apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009).  The first step of the framework requires the plaintiff to establish a prima facie case.  For Title VII, the plaintiff must prove by a preponderance of the evidence that: "(1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a person outside the protected class was treated more favorably than him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493

(6th Cir. 2001). Once the plaintiff has established his prima facie case, the burden shifts to the defendant to show "some legitimate non-discriminatory reason" for the disputed action. *Id.* (quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994)). Finally, the burden shifts back to the plaintiff to prove that the defendant's explanation is "a pretext for discrimination." *Id.* (citing *Burdine*, 450 U.S. at 255).

The Supreme Court has clarified that the prima facie rubric does not create mandatory elements for Title VII claims, but rather provides a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983). Indeed, it has cautioned courts against "applying legal rules which were devised to govern 'the basic allocation of burdens and order of presentation of proof,' in deciding this ultimate question." *Hicks*, 509 U.S. at 524 (quoting *Aikens*, 460 U.S. at 716) (internal citations omitted). Pursuant to this schema:

> when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII.

*Aikens*, 460 U.S. at 714-15 (footnote omitted). Stated differently, the prima facie inquiry "is a preliminary matter which cannot be revisited at a later time." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997). Therefore, once "the case proceed[s] to trial . . . we are no longer concerned with whether the plaintiff established a prima facie case, but instead focus on the actual question of discrimination." *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 757 (6th Cir. 2004).

This principle is well settled in this circuit. *See, e.g.*, *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 674 (6th Cir. 2008) (courts may not review the sufficiency of a prima facie case after a merits trial); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008) (same); *Tisdale*, 415 F.3d at 529 (same); *Fuhr*, 364 F.3d at 757; *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004) (same); *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 822 (6th Cir. 2000) (same); *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1232 (6th Cir. 1996) (same). *See also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000) (district court may not dismiss plaintiff's action for failure to meet the first *McDonnell Douglas* prong based on the evidence defendant advances regarding the second *McDonnell Douglas* prong).

Indeed, it is followed by every circuit in the country. *See, e.g.*, *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) ("[W]hether Bates established a prima facie case of employment discrimination in the summary judgment 'burden-shifting' sense is moot after trial. The relevant inquiry now is simply whether the evidence presented at trial supports a finding of liability."); *Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006) ("[W]e need not indulge the parties' disputes about which material facts are in dispute or whether Riser met his burden in establishing a prima facie case under *McDonnell Douglas* regardless of the 'threshold' we have set for such proof."); *Whittington v. Nordam Grp., Inc.*, 429 F.3d 986, 993 (10th Cir. 2005) ("We have repeatedly stated that juries are not to apply the *McDonnell Douglas* framework and that we are not concerned with plaintiff's proof of a prima facie case when we review a jury verdict."); *accord Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1151 (11th Cir. 2005); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 574 (5th Cir.

2003); *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002); *Coffey v. Dobbs Int'l Services, Inc.*, 170 F.3d 323, 326 (2d Cir. 1999); *Hopp v. City of Pittsburgh*, 194 F.3d 434, 439 (3d Cir. 1999); *Gibson v. Old Town Trolley Tours of Wash., D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998); *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 720 (1st Cir. 1994).

Thus, precedent compels us to disregard the jury's assessment of Litton's prima facie case and instead focus on "the ultimate question of discrimination *vel non*." *See Aikens*, 460 U.S. at 714.

Talawanda would have us reject this precedent based on the technicality that the district court did not deny outright Talawanda's motion for judgment as a matter of law, but rather allowed the case to proceed and "delegated" the issue to the jury to resolve at the close of evidence. In making this argument, it relies on *Gafford v. General Electric Co.*, in which a district court likewise instructed the jury to rule on the sufficiency of the plaintiff's prima facie case at the close of evidence, and this Court affirmed the district court's judgment in favor of the defendant. 997 F.2d 150 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). Talawanda maintains that because the jury ruled in Talawanda's favor on the adverse employment action question, it was precluded from finding for Litton on the question of discrimination.

Talawanda's argument fails. Most importantly, *Gafford* differs from this case, because the *Gafford* jury also found for the defendant *on the ultimate question*. The *Gafford* court resolved only whether the district court committed reversible error by asking the jury to resolve questions regarding the plaintiff's prima facie case. The case at bar carries a contradiction that *Gafford* lacked: the jury found for Talawanda on one question and for Litton on the other. *Gafford* does not instruct us on how to resolve such a conflict.

*Aikens* does resolve this very question and does so in Litton's favor. In *Aikens*, the parties underwent a full bench trial. At the close of evidence, the district court issued a verdict that "erroneously focused on the question of prima facie case rather than directly on the question of discrimination." 460 U.S. at 717. After expressing "surpris[e]" that the parties continued to dispute a threshold question after the trial had ended, *id.* at 714, the Supreme Court remanded the case to the district court to "decide on the basis of the evidence before it whether the Postal Service discriminated against Aikens." *Id.* at 717. We adopted the *Aikens* principle in full in *Avery Dennison*. In *Avery Dennison*, the district court likewise ruled, after a full trial on the merits, that the plaintiff should lose because he had failed to establish an element of his prima facie case. 104 F.3d at 860. We relied on *Aikens* to reverse the district court's ruling and remand it "for a determination on the ultimate issue of discrimination." *Id.* at 863.

When Talawanda lost its summary judgment motion before trial and did not prevail in its motion for judgment as a matter of law at the close of Litton's case-in-chief, it "fail[ed] to persuade the district court to dismiss the action for lack of a prima facie case." *See Aikens*, 460 U.S. at 714. That the district court did not deny the latter motion outright does not strengthen Talawanda's claim. *Aikens* does not condition its rule on the district court's express denial of a motion for judgment as a matter of law, but rather on (1) its failure to grant such a motion and (2) the defendant proceeding to "respond[] to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection." *Id.* at 714-15. *Cf. Tisdale*, 415 F.3d at 529 (declining to visit sufficiency of prima facie case where defendant did not move for judgment as a matter of law during trial); *Avery Dennison*, 104 F.3d 858, 860-61 (district court's denial of *plaintiff's* summary judgment motion prior to trial constituted

acknowledgment that plaintiff had met his prima facie burden).  Thus, the jury's assessment of Litton's prima facie case did not control its finding on the ultimate question of discrimination.

In any event, we have already addressed the potential conflicts between *Gafford*, *Aikens*, and *Avery Dennison*, interpreting *Gafford* to preclude the argument that Talawanda raises.  In *Kovacevich*, we explained that:

> While, as *Gafford* states, the elements of the prima facie case can indeed go before a jury, *Aikens* and *Avery Dennison* simply state that in reviewing a trial that proceeds beyond the prima facie stage, neither the district court nor appellate court should refocus on the question of whether a plaintiff established her prima facie case. . . . [I]n reviewing the facts of a discrimination claim after there has been a full trial on the merits, a district court or an appellate court must focus on the ultimate question of discrimination rather than on whether a plaintiff made out her prima facie case.

224 F.3d 806, 824-25 (6th Cir. 2000).  Thus, the district court was not only permitted to disregard the jury's answer to the adverse employment action question, it was required to do so, and instead to evaluate the strength of the evidence as a whole.

Talawanda confined its argument on appeal to whether the district court erred by failing to defer to the jury's determination of the adverse employment action question.  It did not otherwise challenge the sufficiency of the evidence supporting the jury's finding on the ultimate question of discrimination.  Having rejected Talawanda's argument, we see no need to address the sufficiency of the evidence supporting the jury's verdict.

### III.  CONCLUSION

We AFFIRM.

**ALICE M. BATCHELDER, Chief Judge, dissenting.**  This case turns on a simple question:  Does a Title VII plaintiff have to prove that he was discriminated *against*, or merely that he faced *any* discrimination, including discrimination that was not harmful to him?  This simple question has a clear answer, one that is dictated by Title VII's text, case law, and logic.  Unfortunately, that is not the answer that the majority adopts.  Thus, I respectfully dissent from the majority's extraordinary holding that not only is Litton relieved of his burden to prove that he suffered adverse discrimination, he is entitled to have the district court set aside a jury verdict finding that he failed to meet that burden.

## I.

Talawanda transferred Litton from his job as a custodian at the Talawanda High School to a custodian position at the Talawanda Middle School that had the same pay, work hours, and responsibilities.  But because Litton felt that working at the Middle School was less prestigious and took him from relationships that he had enjoyed at the High School, he deemed the transfer a demotion and sought to be transferred back.  After Talawanda refused, Litton brought this Title VII action.

Litton's claim survived a motion for summary judgment and came to trial.  There, the jury was charged with determining whether Litton had proved by a preponderance of the evidence that either the initial transfer to the Middle School or the later refusal to return Litton to the High School was a material adverse employment action.  The jury found that Litton failed on both counts, a finding it confirmed on Litton's request for polling.  Based on this finding, Talawanda moved for judgment in its favor.  The district court ultimately rejected the motion, holding that whether Litton

had suffered a material adverse employment action was relevant only to Litton's prima facie case and that the sole issue at trial was "whether defendant discriminated against plaintiff because of his race." The majority adopts that conclusion, holding that the "ultimate issue of discrimination" in a Title VII case does not include proof that the discrimination was adverse but instead merely turns on whether discrimination occurred at all.

## II.

As an initial matter, the majority is wrong that precedent such as *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997), "compels us to disregard the jury's assessment" that Litton had failed to prove that he suffered adverse discrimination simply because that assessment concerned "Litton's prima facie case." Maj. Op. at 7. Although the jury's finding was relevant to the prima facie case, it was also—as shown below—integral to the ultimate issue before the jury. This Circuit has repeatedly recognized that courts may "consider[] evidence that . . . bears on th[e] prima facie case as long as it does so in order to address the ultimate question of discrimination." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 825 (6th Cir. 2000); *accord Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). Thus, it is incorrect to "disregard" a finding that bears on the ultimate issue simply because it is also relevant to the prima facie case.

The core problem with the majority's holding is that it treats the question of whether Litton suffered adverse discrimination as distinct from "the ultimate question of discrimination *vel non*." The two are one. Title VII states, "It shall be unlawful employment practice for an employer . . . *to fail or refuse to hire* or *to discharge* any individual, or otherwise to discriminate *against* any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2 (emphasis added). In other words, Title VII does not ban mere discrimination, but only *adverse* discrimination. Thus, the Supreme Court has explained that the "ultimate question" in Title VII cases is not just whether discrimination occurred at all, but "whether the plaintiff has proven that the defendant intentionally discriminated *against* [him.]" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (emphasis added; internal citation and quotation marks omitted); *see also id.* at 523-24 ("Title VII [only] award[s] damages . . . against employers who are *proven to have taken adverse employment action* by reason of (in the context of the present case) race." (emphasis added)). It is, to me, beyond obvious that Title VII applies only where there has been discrimination *against* an individual. That requirement is not merely some vestigial prima facie element that fades into the background as the case progresses—it is at the heart of the claim itself.

This Court directly held as much in *Fuhr v. School District of City of Hazel Park*, 364 F.3d 753, 757 (6th Cir. 2004). There, as here, we confronted the question of whether proof that the plaintiff suffered adverse employment action is part of the "ultimate question of discrimination." *Id.* We concluded that it was, holding that "th[e ultimate] question includes a determination of whether there was evidence from which the jury could have concluded that the action of which Fuhr complains was *adverse* to her." *Id.* at 757-58 (emphasis added); *see id.* at 757 ("The ultimate question of discrimination in this case is whether [the school] 'failed or refused to hire or otherwise discriminated against Fuhr with respect to her compensation, terms, conditions, or privileges of employment, because of Fuhr's sex.'" (quoting Title VII) (internal editing omitted)). Because Fuhr had proved that she "suffer[ed] an adverse employment action," we found that she had answered the

"actual question of discrimination" in her favor. *Id.* at 757-58. *Fuhr*'s analysis is directly applicable

to this case, and its holding essentially forecloses the majority's.

None of the cases that the majority cites to support its conclusion are to the contrary. Not

one states that the "ultimate question of discrimination" disregards whether the discrimination was,

in fact, adverse. At best, they are silent on the issue.[1] More often, they directly contradict the

majority's holding by explicitly requiring that discrimination be adverse in their formulation of the

ultimate question.[2] For instance, far from sanctioning the majority's course, the Supreme Court's

decision in *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983), makes clear that

answering the "ultimate question" necessarily includes proof of adverse discrimination: "The factual

inquiry in a Title VII case is whether the defendant intentionally discriminated *against* the plaintiff.

In other words, is the employer . . . treating some people *less favorably* than others because of their

---

[1] *See, e.g.*, *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000); *Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006).

[2] *See, e.g.*, *Fuhr*, 364 F.3d at 757; *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1232 (6th Cir. 1996) (recognizing that the "ultimate question" is "whether the plaintiff carried her burden of proof of discriminatory *discharge*." (emphasis added)); *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (holding that the "one central question" at a Title VII trial is whether "the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated *against* the employee on the basis of race, color, religion, sex, or national origin[.]" (emphasis added)); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007) (finding that, in a disability discrimination case, "an employee bears the ultimate burden of proving that he [wa]s . . . discriminated *against* 'because of' [his] disability[.]" (emphasis added)); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1150-51 (11th Cir. 2005) (recognizing that *Aiken*'s "ultimate question of discrimination *vel non*" formulation required asking "whether the defendant intentionally discriminated *against* the plaintiff." (emphasis added)); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 574 (5th Cir. 2003) (holding in an age discrimination case that, even though a plaintiff need not revisit his prima facie case after a trial on the merits, he still must show that he "has met his ultimate burden of proving that the employer *terminated him* because of age." (emphasis added)); *Coffey v. Dobbs In'l Servs., Inc.*, 170 F.3d 323, 326 (2nd Cir. 1999) (finding that "the ultimate question of discrimination *vel non*" requires the plaintiff to introduce "sufficient evidence to support a finding that [the defendant] intentionally discriminated *against* her[.]" (emphasis added; internal citation, quotation marks, and edits omitted)).

race, color, religion, sex, or national origin." (emphasis added; citations and internal quotation marks omitted).

The majority's holding also contradicts Title VII's internal logic. Litton asserts, and the majority agrees, that because whether there was any negative action is not actually a part of a claim of "discrimination," to be successful he need only show that his employer made a decision based on his race. *See* Litton Br. at 16–17; Maj. Op. at 7. But under this reasoning, an employee could sue for a neutral or even positive employment action. That is nonsensical. No employee could be told, "We are promoting you because of your race," respond with "Thank you very much," and then promptly sue because the employer based its decision on his race. Although co-employees of another race who were not promoted might well have a case, *see, e.g.*, *Ricci v. DeStefano*, 557 U.S. 557 (2009), the *beneficiary* of the discrimination would not.

In sum, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated *against* the plaintiff remains at all times with the plaintiff." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715 (6th Cir. 2004) (quoting *Hicks*, 509 U.S. at 518) (emphasis added). Though Litton produced enough evidence regarding adverse treatment to get his prima facie case past summary judgment—which required only that he show that the evidence was not "so one-sided that [Talawanda] must prevail as a matter of law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)—he failed to meet his burden to prove the "ultimate question," namely, that he was discriminated *against*. It might be that a transfer from a prestigious job to a less prestigious one can constitute a material adverse employment action. But Litton failed to prove as much here and the jury found that he had failed. The majority should not relieve Litton of his burden, and it certainly

should not grant him victory in the face of a jury verdict finding that he never proved that he suffered adverse discrimination at all. The whole purpose of Title VII, as stated clearly by its text and controlling case law, is preventing *harmful* discrimination, not the lamentable-but-benign discrimination that the jury found Litton experienced.

I respectfully dissent.

**SILER**, Judge, concurring.  The dissent sets out a very reasonable result to this case.

However, I concur with the majority because I feel that the decision in *EEOC v. Avery Dennison*

*Corp.*, 104 F.3d 858, 861 (6th Cir. 1997), precludes this court from considering the result proposed

by the dissent.  I do not mean to say that a plaintiff in a Title VII case does not have the burden of

showing that he suffered adverse discrimination.  He does, but the peculiar facts of this case come

under the umbrella of the *Avery Dennison* case.  It is an anomaly that this is allowed, but that is my

interpretation of the decision in *Avery Dennison*.