# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1422

_____

| | |
|---|---|
| John F. Barker, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Missouri Department of Corrections, | * |
| | * |
| Appellee. | * |

_____

Submitted: November 15, 2007
Filed: January 24, 2008

_____

Before RILEY, TASHIMA,[1] and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

John F. Barker sued the Missouri Department of Corrections (MDOC) alleging that it violated Title VII of the Civil Rights Act of 1964 by retaliating against him for aiding a co-worker to report sexual harassment. The district court[2] granted summary judgment for the MDOC, holding that Barker did not engage in a protected activity. We affirm.

_____

[1]The Honorable A. Wallace Tashima, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

## I. *Background*

The following facts are stated in the light most favorable to John Barker, the non-moving party. Barker, a correctional officer at the Potosi Correctional Center, was appointed shop steward in 2002. As shop steward, it was Barker's job to assist fellow employees with filing grievances. During 2003, Barker worked as an officer in the special needs unit (SNU), which houses inmates with mental diseases and disabilities.

On June 23, 2003, Shannon Gifford, the SNU manager, entered the control room in the SNU and asked Officer William Bjork, who was new to the SNU, if he was enjoying his new placement. Bjork responded that he did not like working in the SNU because the inmates behaved poorly and were different than other inmates he had worked with. Bjork also stated that he had no SNU training. Gifford then told Bjork, in a "commanding voice," that he could not reenter the SNU without receiving training. A female SNU officer, upon hearing Gifford's statement, stated that she had worked in the SNU for a year but had not received SNU training. Gifford responded,"you don't need the training, women are better by and large as they do a better job than men do anyway and are more patient and nurturing than men and we have no complaints about them." Despite Gifford's comments, Bjork remained assigned to the SNU until mid-October 2003.

The next day, Barker helped Bjork draft an incident memorandum describing Gifford's comments to the appropriate supervisory authority. Three days later, on June 27, 2003, Bjork filed an employee grievance, drafted by Barker, based on Gifford's comments alleging sexual harassment.

On July 1, 2003, an inmate accused Barker and another officer of using excess force. The inmate complained to the SNU officer whose shift followed Barker's, that Barker and the other officer forced him into his cell and slammed his leg in the door. The inmate told the officer that he had lost his shoe in the struggle, and the officer saw the inmate's shoe outside his cell. The SNU officer also observed bruises on the

inmate's shoulders and right thigh. Two other inmates corroborated the injured inmate's story. Barker disputed the inmate's story and noted discrepancies in the age of the inmate's bruises.

According to MDOC policy, "the superintendent/designee shall be immediately notified of any use of force." MDOC policy requires that use of force reports be filled out and submitted to a supervisor prior to leaving duty. Barker had not filed a use of force report before leaving work, and MDOC has a nondiscretionary policy that requires it to investigate any claim of an unreported use of force. MDOC investigated this incident during July 2003, and the investigator determined that Barker had not reported the use of force but made no determination whether the force used had been excessive.

MDOC policy also requires an annual performance review for each correctional officer. Barker received a rating of unsatisfactory on his 2003 performance review, the lowest possible rating. Barker's review noted that he had thirteen unscheduled absences, he had locked himself out of a major prison entrance, and he had failed to report use of force. As a result of this rating, Barker had to participate in a special employee appraisal. Barker was also found to have attempted to mislead investigators and solicit false testimony. Barker received a five-day suspension for his failure to report use of force.

About two years later, Barker filed the current action alleging that the MDOC violated Title VII of the Civil Rights Act of 1964 by retaliating against him for reporting the alleged sexual harassment of Bjork. On December 19, 2006, the district court granted summary judgment for the MDOC, concluding that no reasonable person would objectively believe that Gifford's comment to Bjork violated Title VII. The court also concluded that no reasonable jury could find that MDOC's proffered reason for suspending Barker was pretextual.

II. *Discussion*

On appeal, Barker argues that the district court erred in granting summary judgment because his assistance in filing Bjork's grievance constituted a protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. We review the grant of summary judgment de novo. *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 478 (8th Cir. 2004). We view the evidence in the light most favorable to the nonmoving party, and summary judgment is appropriate if the evidence demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

Title VII prohibits an employer from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "The two clauses of this section typically are described, respectively, as the opposition clause and the participation clause." *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 741 (8th Cir. 2005) (Colloton, J., concurring). Barker claims protection of the opposition clause, which shields an employee against discrimination because he has opposed a practice made unlawful by Title VII. *Id.* at 742. We interpret this provision to encompass actions that oppose employment actions that are not unlawful, "as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Id.*[3]

Because Barker has no direct evidence of retaliation, his claim is analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff has the initial burden of establishing a prima facie case of

---

[3]Barker claims, for the first time on appeal, that his conduct falls within the participation clause of Title VII as well. Barker has thus waived that argument. *See Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1096 (8th Cir. 2004).

retaliation. *Clark v. Johanns*, 460 F.3d 1064, 1067 (8th Cir. 2006). Once the plaintiff satisfies this burden, defendant must offer a legitimate, non-discriminatory reason for the employment action. *Id.* The burden of production then returns to the plaintiff to show that the employer's reason was a pretext for discrimination. *Id.*

To establish a prima facie case of retaliation, Barker must present evidence that (1) he engaged in a protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821, 826 (8th Cir. 2006). "[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (internal citations and quotations omitted). "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances" including the frequency, physicality and severity of the conduct. *Id.* at 270–71. Conduct is not actionable under Title VII if no reasonable person could have believed the incident violated Title VII's standard. *Id* at 271.

Barker argues that when helping Bjork to file a grievance, he was engaged in protected activity because he reasonably believed Gifford's comments constituted unlawful sexual harassment. He also claims that he engaged in a protected activity when he assisted Bjork with drafting the memorandum reporting Gifford's remark. In order for Barker's assistance to be protected, Barker must demonstrate that he had an objectively reasonable belief that Gifford's remark to Bjork constituted sexual harassment under Title VII. We conclude that Gifford's single, isolated statement, implying that women are more nurturing and better suited for work in the SNU, is insufficient as a matter of law to support an objectively reasonable belief that the statement constituted sexual harassment.

Gifford's isolated remark falls far short of being actionable. *See LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101–02 (8th Cir. 2005)

(finding that "to be actionable, conduct must be extreme and not merely rude or unpleasant"; and stating harassment did not create a hostile work environment when priest/board member made unwelcome sexually explicit advances on three separate occasions); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933–34 (8th Cir. 2002) (finding five harassing incidents—including a relationship proposition, improper touching, a request that plaintiff draw a sexually objectionable picture and posting of offensive posters—did not meet the standard necessary to be actionable).

We agree with the district court that no reasonable person could objectively believe that Gifford's comments violated Title VII. Barker cannot make out a prima facie case, therefore, we affirm the district court's grant of summary judgment.[4]

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]Because Barker cannot make out a prima facie case, we do not reach Barker's pretext arguments. Similarly, the MDOC filed a motion to strike portions of Barker's brief related to use of an affidavit by Barker in his pretext analysis. Again, because we have resolved the case at the prima facie stage, we need not address the MDOC's motion to strike.