# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3332

_____

| | | |
|---|---|---|
| Tristan Bonn, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| City of Omaha, a political subdivision; | * | |
| Jim Suttle, in his official capacity as | * | |
| Mayor of Omaha; Steve Oltmans, in his | * | |
| official capacity as the Mayor's Chief | * | |
| of Staff, | * | |
| | * | |
| Appellees.[1] | * | |

_____

Submitted: June 17, 2010
Filed: October 19, 2010

_____

Before WOLLMAN, EBEL,[2] and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

_____

[1]Mayor Suttle and Chief of Staff Oltmans are substituted for their predecessors pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[2]The Honorable David M. Ebel, Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

Tristan Bonn was terminated from her position as the Public Safety Auditor for the City of Omaha after she published a report criticizing the Omaha Police Department ("OPD"). Bonn filed suit in Nebraska state court against the City of Omaha, former Mayor Mike Fahey, and the former Mayor's Chief of Staff Paul Landow (collectively, "appellees"). Bonn asserted a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging that the appellees unlawfully retaliated against her for opposing discriminatory employment practices. She also asserted a claim under 42 U.S.C. § 1983, contending that the appellees violated her rights to freedom of speech under the First and Fourteenth Amendments when they terminated her for publishing the report. Bonn asserted two more claims based on Nebraska state law. After the appellees removed the case to federal court, the district court[3] granted summary judgment in favor of the appellees on Bonn's Title VII and § 1983 claims, and remanded the state-law claims to state court. Bonn appeals, and we affirm.

I.

Because we are reviewing the district court's grant of summary judgment against Bonn, we recite the facts in the light most favorable to her. *See Barker v. Mo. Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008). Bonn was hired in June 2001 as the Independent Public Safety Auditor for the City of Omaha, and she held that position until she was terminated in October 2006. The position of Public Safety Auditor position was created to review and audit citizen complaints against sworn police officers and firefighters. As part of her duties, Bonn authored numerous published reports, and she spoke often to media organizations to disseminate her findings.

---

[3]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Bonn's position was established by ordinance and was funded by the Omaha City Council, but shortly after Bonn was hired, the city council decided to stop funding the position. Mayor Fahey secured private funding for the position through 2005. On January 1, 2006, Bonn became an employee of Mayor Fahey's office. Bonn says that she never received a written job description, but Landow allegedly told her to "just keep doing what [she] had been doing." Bonn also asserts that she and Landow agreed that she lost her civil service protection, but that she would not be terminated if she wrote a report that the Mayor did not like.

As part of her official duties as the Public Safety Auditor, Bonn prepared a report entitled "Anatomy of Traffic Stops." Bonn asserts that throughout 2006, she kept Mayor Fahey and Landow apprised of her intention to publish a report about traffic stops. Then, on the afternoon of October 19, 2006, Bonn sent by e-mail a copy of her completed report to Mayor Fahey, Landow, and the Chief of Police. On October 20, 2006, Bonn had the report posted to the Auditor's website and distributed it to interested individuals via e-mail. Mayor Fahey asserts that he did not have an opportunity to review and comment on the final version of the report before it was published.

The report declared that it would "describe, by analyzing traffic stop complaints, how the [OPD] finds itself currently estranged from many of the communities it serves and offers suggestions about how it can repair those relations." In a section of the report entitled "The Scope of this Report," Bonn stated:

> In an attempt to illuminate the causes of [complaints filed against the OPD], this report examines the separate and distinct parts of a traffic stop typically conducted by OPD and the resulting complaint patterns. The report goes on to analyze the practices and procedures that give rise to the community's repeated complaints. By closely examining both the complaint patterns and dissecting the traffic stop practices, this report

will lay bare the anatomy of these traffic stops in an attempt to uncover some of the root causes of these complaints.

Another section entitled "Solutions" set forth a number of recommendations about how the OPD could "improve its relationship with the communities of color." Within this section, the report included several paragraphs related to recruitment. Bonn noted that the "OPD has not been very successful recruiting or maintaining a diverse workforce." She explained that a "by-product of harsh and poor policing tactics in communities of color is that the young members of those communities do not select policing as a career," and that excessive policing in minority neighborhoods may eliminate minorities from the application pool because of misdemeanor police records. Her report also described the lack of African-Americans working on the night shift in one precinct, and explained that some Omaha residents would like to see more diversity in the police forces in their neighborhoods.

After Bonn's report was published, she spoke with at least two media outlets, a radio station and the *Omaha World-Herald* newspaper. Bonn explained that she commented on a radio show after the station contacted her about the report. On October 24, 2006, the *Omaha World-Herald* published an article entitled "Mayor Sides With Police After Report," which discussed Bonn's report and quoted "Public Safety Auditor Tristan Bonn."

On October 30, 2006, Bonn was terminated. In a letter to Bonn, Mayor Fahey stated Bonn's release of the report without notice to the mayor was insubordinate. In his deposition, Landow cited as reasons for the termination a complaint that Bonn sent to the *Omaha World-Herald* by e-mail about the paper's coverage of her report, a disrespectful e-mail that Bonn sent to Landow, and comments she made to the media in connection with the report that were critical of Mayor Fahey.

-4-

The district court granted summary judgment in favor of the appellees on Bonn's claims under Title VII and § 1983 and remanded her state-law claims to state court. The court concluded that Bonn's Title VII claim failed because she did not present a submissible case that the appellees retaliated against her for opposing a discriminatory employment practice. On Bonn's § 1983 claim, the court ruled that Bonn's statements in her report and to the media were not protected by the First Amendment.

We review the district court's grant of summary judgment *de novo*. *Babinski v. Am. Family Ins. Grp.*, 569 F.3d 349, 351 (8th Cir. 2009). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

## II.

Bonn first contends that the district court erred in granting summary judgment in favor of the appellees on her Title VII retaliation claim. Under Title VII, it is unlawful for an employer to discriminate against an employee because she "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Bonn contends that by publishing her report, she "was opposing systemic discrimination within the Omaha Police Department."[4]

---

[4]Bonn argues for the first time on appeal that the termination also violated the "participation clause" of 42 U.S.C. § 2000e-3(a), which makes it unlawful to retaliate against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Bonn did not raise this claim in the district court, and specifically renounced such a claim by arguing that "there was no EEOC/Title VII investigation until after [Bonn's] termination so obviously we must focus on the opposition clause." (R. Doc. 55, at 19). The claim is therefore waived. *See Barker*, 513 F.3d at 834 n.3; *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999).

Because the factual record was fully developed on Bonn's motion for summary judgment, we focus on the ultimate question whether she presented sufficient evidence to make a submissible case of unlawful retaliation. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861 (8th Cir. 2009); *Riser v. Target Corp.*, 458 F.3d 817, 820-21 (8th Cir. 2006). To establish a claim of retaliation, Bonn must present evidence (1) that she engaged in a protected activity, (2) that the employer took an adverse action against her, and (3) that a causal connection exists between the two. *Barker*, 513 F.3d at 835. The district court concluded that Bonn's Title VII claim failed because Bonn did not establish that she engaged in a protected activity. The court reasoned that Title VII prohibits retaliation only when it is motivated by an employee's opposition to discriminatory employment practices, and that Bonn opposed only the police department's policing practices.

Bonn contends that publication of her report was protected activity because the report exposed employment discrimination by the OPD. The appellees respond that Bonn failed to show that the OPD engaged in any unlawful employment practice, and that her retaliation claim fails because Title VII protects only opposition to "any practice *made an unlawful employment practice*" by Title VII. *See* § 2000e-3(a) (emphasis added). In *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Supreme Court left unanswered the question whether an employee must oppose a practice that *actually* violates Title VII, or whether § 2000e-3(a) protects an employee when she has a reasonable, good faith belief that she is opposing a practice that violates Title VII, even if the practice is not unlawful. *Id.* at 270. Our circuit has applied § 2000e-3(a) more broadly than the plain language might suggest, and held that it covers opposition to "employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Barker*, 513 F.3d at 834 (internal quotation omitted); *see also Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 742 (8th Cir. 2005) (Colloton, J., concurring in part and dissenting in part). We therefore proceed on the assumption that Bonn's activity was protected if she acted with such a reasonable belief.

-6-

We conclude, however, that the evidence does not support a finding that Bonn reasonably believed that she opposed an unlawful employment practice by publishing her report. The thrust of Bonn's report was to explain that the OPD's policing practices caused the OPD to become "estranged from many of the communities it serves." The report was critical of the OPD's policing tactics, especially the OPD's conduct during traffic stops, and alleged that the OPD's practices were potentially discriminatory. But Bonn's report did not examine the OPD's employment practices or challenge directly any practice as unlawful under Title VII.[5]

In one section of the report, Bonn briefly mentioned police recruitment. The report noted that the OPD "has not been very successful recruiting or maintaining a diverse workforce," and explained that "[u]nfortunately, another by-product of harsh and poor policing tactics in communities of color is that the young members of those communities do not select policing as a career." In the section on recruitment, Bonn also highlighted that the challenged police conduct could knock potential minority applicants "out of the application pool because of a misdemeanor police record." Bonn's report, however, did not allege that the police tactics were intended to affect

---

[5]Under Title VII, it is an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

minority recruitment, or that the OPD was engaged in any discriminatory practices in its actual recruitment or hiring processes.

Even though Bonn briefly highlighted the possible effects that OPD tactics could have on police recruitment, these effects were far too attenuated from actual employment practices for Bonn to have a reasonable belief that her activity was protected by Title VII. We have explained more than once that "opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII." *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1183 (8th Cir. 1998); *see Bakhtiari v. Lutz*, 507 F.3d 1132, 1137-38 (8th Cir. 2007); *Evans v. Kan. City, Mo. Sch. Dist.*, 65 F.3d 98, 101 (8th Cir. 1995). The allegations in Bonn's report related to the OPD's potentially discriminatory policing tactics, and it was not reasonable for her to conclude that these policing tactics were employment practices that violated Title VII, simply because the tactics might affect the applicant pool for future employment opportunities. Employers engage in all sorts of activities that may deter potential applicants for employment, but these are not all "unlawful employment practices" to which an employee may register opposition and then claim protection under the Title VII cause of action for retaliation. *See Evans*, 65 F.3d at 100-01; *Crowley v. Prince George's Cnty.*, 890 F.2d 683, 687 (4th Cir. 1989).

## III.

Bonn also argues that the district court erred in granting summary judgment on her claim that the appellees violated her rights to freedom of speech under the First and Fourteenth Amendments. She observes correctly that "[a] public employer may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech," *McGee v. Pub. Water Supply, Dist. # 2*, 471 F.3d 918, 919 (8th Cir. 2006) (internal quotation omitted), and alleges that the appellees terminated her based on protected speech contained in her report.

A public employee retains a degree of First Amendment protection when she speaks as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). But if speech is outside this category, then "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* at 418. In particular, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421; *see Lindsey v. City of Orrick*, 491 F.3d 892, 898 (8th Cir. 2007).

We agree with the district court that Bonn was not speaking as a citizen when she published her report, so her speech was not protected by the First Amendment. As the district court explained, Bonn's own admission defeats her claim. In response to an interrogatory, Bonn admitted that her report was "prepared as a function or official duty of [her] position as the Public Safety Auditor of the City of Omaha." It is thus undisputed that Bonn did not speak as a citizen when she published her report, and that she has no cause of action based on her employer's reaction to the report. That the mayor and his chief of staff viewed some of Bonn's actions during the episode as insubordinate does not change the fact that she spoke as a public employee. The controlling factor is whether the expressions were made pursuant to the employee's duties, not whether the employer ultimately approved of the expressions or related actions.

We also reject Bonn's contention that her comments to the media were protected speech. After Bonn published her report, a radio station and the local newspaper contacted her for comment about the report. Bonn made several comments that were published in a newspaper article entitled, "Mayor Sides With Police After Report." The article described Bonn as the "Public Safety Auditor," and noted that the Mayor's decision to side with the police chief "was characteristic of what [Bonn] sees as a lack of support from the Mayor's Office for her efforts."

Bonn has no claim against the appellees based on their reactions to her comments to the media, because she was not speaking as a citizen when she made those remarks. Bonn spoke to the media pursuant to her official duties as the Public Safety Auditor. She acted in response to media inquiries about a report that she published as part of her work as auditor, and the media identified her as a public official rather than a private citizen. Bonn explained in the district court that throughout her employment, she often spoke with the media "to disseminate [her] findings, increase public confidence in the internal investigating process and promote public awareness." It is thus clear from Bonn's own averments that her job duties included speaking to the media about her work as auditor, and that her comments to the media about the OPD report were made in her official capacity. The district court properly dismissed Bonn's § 1983 claim based on the First Amendment.

*       *       *

The judgment of the district court is affirmed.

_____