# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2243

_____

Lionel Pye,

                Appellant,

      v.

Nu Aire, Inc., also known as
NuAire International, Inc.,

                Appellee.

\*  Appeal from the United
\*  States District Court for
\*  the District of Minnesota.

_____

Submitted: February 17, 2011
Filed: June 17, 2011

_____

Before WOLLMAN and BYE, Circuit Judges, and FLEISSIG,[1] District Judge.

_____

FLEISSIG, District Judge.

      Lionel Pye appeals from the district court's grant of summary judgment in favor of his former employer, NuAire, Inc. ("NuAire"), on his claims of race discrimination, hostile work environment, and termination as a result of retaliation, in violation of

---

[1] The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, sitting by designation.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Minnesota Human Rights Act, Minn. Stat. § 363A.15 ("MHRA").[2] We affirm with respect to the discrimination and hostile work environment claims, and reverse and remand with respect to the retaliation claims.[3]

## I.

As we are reviewing a grant of summary judgment, we describe the facts in the light most favorable to Pye. *See Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 413 (8th Cir. 2010). On July 21, 2007, NuAire hired Pye, a 25-year-old African American, as a metal finisher, in a temporary, entry-level position. On October 22, 2007, NuAire hired Pye in that position as a regular employee. On that same day, Pye asked NuAire's payroll administrator, Cheryl Holladay, to fill out a two-page employment verification form that he needed to submit to the county to qualify for housing assistance. Holladay told him to return in one week after he had received a paycheck as a regular employee. Pye agreed, and left the form with her.

Pye returned to Holladay's office on October 30, 2007, but she told him to come back later as she had not yet gotten around to completing the employment verification form. Pye again explained his situation, but Holladay said that she did not really care about his situation and referred to the form as "dumb." Pye left, but immediately returned to ask what time he should come back. While he was standing in the doorway, before Holladay realized he had returned, he saw Holladay sitting at

---

[2] Pye also asserted various common law tort and negligence claims, but does not appeal from the district court's grant of summary judgment on these claims.

[3] Discrimination, hostile work environment, and retaliation claims under Title VII and the MHRA are governed by the same standards. *Fercello v. Cnty. of Ramsey*, 612 F.3d 1069, 1074 n.2 (8th Cir. 2010). We therefore analyze the Title VII and MHRA claims together in this case, as did the district court.

her desk looking at papers and heard her say "nigger goon." Holladay then saw Pye and hurriedly filled in parts of the form, faxed it to the county, and gave Pye a copy.

When Pye left Holladay's office, he noticed that part of the form had not been completed. Seeing his supervisor, Ken McKnight, Pye told him that Holladay had been rude to him and had not completed the form. McKnight went to speak to Holladay and when he came out of her office, he told Pye to take the form back to Holladay and she would help him. Pye went back into Holladay's office and she apologized to him for the way she had treated him. She then added information to the form and faxed it to the county again. A few days later, Pye represented on a new-employee questionnaire that he was happy at his job and had no complaints.

On or about November 12, 2007, Pye learned from the county that it had only received the top page of the form. Pye returned to Holladay the same day to discuss the matter and she was rude to him again. On November 14, 2007, Pye left a written complaint in McKnight's office, stating that Holladay had referred to him as a "nigger goon," and had not properly filled out the employment verification form in a timely manner, causing him not to get housing assistance from the county. McKnight immediately referred the matter to NuAire's Director of Human Resources, Vickie Johnson.

Johnson, who was Holladay's friend, reviewed the complaint with Holladay on the day she received it. Holladay admitted calling the form "dumb," but denied Pye's other allegations. The following day, Johnson wrote a note regarding the investigation to James Peters, a Vice President at NuAire. Johnson stated her belief that any interviews and the investigation should be conducted by someone else, or at least overseen by someone else, as she did not want to be accused of covering for Holladay because Johnson was Holladay's supervisor. Johnson also stated that she was "very upset at the allegations that this person [Pye] has made, and with the number of people we come in contact with in our jobs -- without the benefit of witnesses -- we are very vulnerable for these types of allegations."

-3-

Johnson, nonetheless, proceeded with the investigation, and met with Pye and McKnight on November 15, 2007. The parties dispute just what was said at the meeting. Accepting Pye's rendition of what transpired, Johnson began by telling him that she did not believe his allegation that Holladay had referred to him as a "nigger goon," and stated that she had known Holladay for many years, and that Holladay was not a racist. Pye explained the situation to Johnson and McKnight, including that he had lost the housing assistance. Johnson asked him, with disdain, what he wanted to make the problem go away. Pye responded that he wanted to be helped or compensated for what had occurred. Johnson continued to ask him what he wanted to make the problem go away. Pye turned to McKnight and said he had been requesting to move into different jobs in the company, at which point Johnson asked him if he wanted a position with more money, more benefits, or perhaps with a company car. Pye asked what was usually done in this type of situation, and stated that he wanted the matter handled in the usual manner. He also responded that a company car would be nice. Pye also asked Johnson whether, if she could not deal with the matter properly because of her friendship with Holladay, she could give his complaint to someone higher up in the company.

After the meeting, Johnson sent Peters an email stating that Pye "was shaking us down" -- that he wanted a promotion, money, and a company car "for his trouble." She also wrote that Pye had said that "he doesn't want to take it to the next step because a multi-million dollar company like NuAire would go out of business." NuAire's witnesses testified that they believed that with this language, Pye was referencing the filing of a lawsuit. Johnson suggested to Peters that a lawyer be consulted to see if NuAire could fire Pye for making threats. Peters responded that he did not need to consult a lawyer, and directed McKnight to fire Pye when Pye next returned to work on Monday, November 19, 2007. The only information Peters had at the time he made the decision to terminate Pye pertained to Pye's allegations of discrimination, and to the investigation; he had no information regarding Pye's performance on the job.

-4-

McKnight fired Pye on November 19, 2007, telling him that his services were no longer needed and to call Human Resources if he wanted more information. Upon inquiry by Pye the next day, Johnson told him that he was terminated for attempting to obtain a promotion and/or money and a company car through coercion or intimidation.

In his complaint, Pye also alleged that before his termination, he requested training which was denied, while white employees with less skill and experience were given promotions and training. In Count I of his complaint Pye asserted claims for retaliatory termination and hostile work environment. In Count II, he asserted claims of racial harassment and discrimination, and hostile work environment. Specifically, Pye asserted in Count II that he was treated differently than white employees, that the harassing conduct toward him and the failure of supervisors to respond to the situation appropriately created a hostile work environment, and that NuAire "maintained a system of employment which adversely affected African American employees."[4]

## II.

In the order granting summary judgment, the district court declined to address NuAire's argument that Pye's Title VII claims should be dismissed for his failure to file a charge with the EEOC, determining that judicial economy would be served by dealing with the claims on the merits.

On the merits, the district court first rejected Pye's claim that he was discharged on the basis of race. Finding no link between Holladay's conduct and Pye's termination, the district court analyzed the claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and held that

---

[4] Counts III thru VII asserted the state tort claims that are not at issue on appeal. Also not at issue on appeal is McKnight's dismissal from the case as a Defendant.

Pye failed to establish a prima facie case under *McDonnell Douglas*, because he did not show that similarly situated white employees were treated differently.

The district court held that Pye's hostile work environment claim failed because a reasonable person would not consider Holladay's comments so extreme as to create an abusive work environment.

With regard to the claim of retaliatory discharge, the district court found it unnecessary to consider whether Pye could establish a prima facie case under the *McDonnell Douglas* framework, because the claim failed at the pretext stage. The court held that NuAire articulated a legitimate, non-discriminatory reason for terminating Pye -- his coercive attempt to gain employment and monetary benefits -- and Pye did not produce evidence showing that NuAire did not honestly believe that his actions were coercive. Moreover, stated the court, no evidence suggested that retaliation was the true cause of NuAire's decision to terminate Pye.

III.

We review de novo the district court's decision to grant summary judgment, viewing the record in the light most favorable to the nonmoving party. *See Winspear v. Cmty. Dev., Inc.,* 574 F.3d 604, 605 (8th Cir. 2009). "We will affirm the grant of summary judgment if 'there is no genuine issue as to any material fact . . . and the movant is entitled to judgment as a matter of law.'" *Marksmeier v. Davie*, 622 F.3d 896, 899 (8th Cir. 2010) (quoting Fed. R. Civ. P. 56).

> Disputes that are not "genuine," or that are about facts that are not "material," will not preclude summary judgment. "Material facts are those which might affect the outcome of the lawsuit. A dispute over an issue of fact is 'genuine' if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue."

*Id*. (citations omitted).

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, ___ F.3d ___, 2011 WL 2135636, at *8 (8th Cir. June 1, 2011) (en banc) (citations omitted). "Although employment discrimination cases are 'often fact intensive and dependant on nuance in the workplace, they are not immune from summary judgment.'" *Trierweiler v. Wells Fargo Bank*, ___F.3d ___, 2011 WL 1327991, at *3 (8th Cir. April 8, 2011) (quoting *Fercello*, 612 F.3d at 1077). "If there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Id.* (quoting another source); *see also Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1082 -83 (8th Cir. 2010) ("[N]o separate summary judgment standard exists for discrimination or retaliation cases and . . . such cases are not immune from summary judgment.")

IV.

A.

We conclude that the district court correctly determined that NuAire was entitled to summary judgment on the harassment/hostile work environment claim. Pye's claim of racial harassment and a racially hostile work environment is based on Holladay's comment to him that his employment verification form was "dumb" and her use of an offensive racial slur when she was not aware that he could hear her, along with NuAire's allegedly unfair investigation of his internal complaint about these matters.

To sustain a claim for harassment/hostile work environment, a plaintiff must show that he "is a member of a protected group, that there was unwelcome harassment, that there was a causal nexus between the harassment and membership in the protected group, and that the harassment affected a term, condition, or privilege of employment." *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942 (8th Cir. 2010) (quoting another source).

-7-

"A hostile work environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Fairview Ridges Hosp.*, 625 F.3d at 1083 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Relevant factors for determining whether conduct rises to the level of harassment include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005) (citation omitted).

Here, Pye failed to establish the threshold of actionable harm necessary to constitute a hostile work environment. Accepting Pye's version of the facts, the racial term used by Holladay, while entirely inappropriate and offensive, was a one-time occurrence by a non-supervisor, and was not made directly to Pye. *See Singletary,* 423 F.3d at 893 (finding that the fact that the plaintiff learned second-hand that co-workers and supervisors had referred to him as a "nigger" several times was insufficient to support a hostile work environment claim); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759-60 (8th Cir. 2004) (finding that racial slurs that were "sporadic, no more than one per month," over a period of two years, some of which were "merely overheard" by the employee, were not so severe or pervasive to alter the terms or conditions of his employment); *cf. Delph v. Dr. Pepper Bottling Co. of Paragould, Inc.*, 130 F.3d 349, 352, 356 (8th Cir.1997) (upholding a hostile work environment claim where the plaintiff had been subjected to "a steady barrage of racial name-calling").[5]

---

[5] NuAire further asserts that Pye's words and actions belie his claim of a hostile work environment, noting that he waited two weeks to submit his complaint to McKnight, and that on the new employee questionnaire completed on or about November 2, 2007, approximately three days after Holladay's alleged use of the racial slur and calling the form he requested dumb, he expressed satisfaction with his job, and expressed no dislikes. We note, however, that this questionnaire was completed

B.

We also conclude that the district court did not err in granting NuAire summary judgment on Pye's claims that he was fired on the basis of his race, and treated less favorably than similarly-situated white employees while on the job. The district court correctly held that Pye presented no direct evidence that his termination or alleged lack of training or job change opportunities were racially motivated and thus, that the *McDonnell Douglas* framework applied. Under this framework, the plaintiff initially has the burden to establish a prima facie case of discrimination. A prima facie case creates a rebuttable presumption of discrimination. The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873-74 (8th Cir. 2010).

To establish a prima facie case of discrimination, a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Wierman v. Casey's Gen. Stores,* ___ F.3d ___, 2011 WL 1166706, at *5 (8th Cir. March 31, 2011). An adverse employment action is "one that produces a *material* employment disadvantage." *Jackson v. UPS, Inc.*, 548 F.3d 1137, 1141 (8th Cir. 2008) (quoting another source). "The required prima facie showing is a 'flexible evidentiary standard,'" and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased

---

after Holladay had apologized for her behavior, and before Pye learned the employment verification form had not been completed and before his further encounter with Holladay on November 12, 2007, after which the internal complaint was made.

comments by a decisionmaker. *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

"This Court has two lines of cases on the standard to determine whether employees are 'similarly situated' at the prima facie stage of the *McDonnell Douglas* test." *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009) (citing *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 851 (8th Cir. 2005)). "One line sets a 'low threshold,' requiring only that the employees are 'involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Id.* "The other line more rigorously requires that the employees be 'similarly situated in all respects.'" *Id.*

Under either standard, we agree with the district court that Pye has failed to come forward with any similarly-situated white employees who were given more training or job-change opportunities, or who were accused of comparable conduct and not fired by NuAire. Furthermore, the exhibits Pye references in support of his allegation of disparate firing by NuAire of African Americans do not show such a disparity. Nor has Pye presented any evidence of racial bias by any decisionmakers, and Holladay's treatment of Pye did not produce any material employment disadvantage. In sum, we conclude that Pye has not shown any circumstances that give rise to a reasonable inference of racial discrimination with regard to the decision to fire him or his treatment with respect to the terms and conditions of his employment at NuAire.

## C.

We conclude, however, that the district court erred in granting summary judgment on Pye's retaliation claims. Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title

-10-

VII]." 42 U.S.C. § 2000e-3(a); *see generally Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 867-68 (2011). This Court applies § 2000e-3(a) broadly to cover opposition to "employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Bonn v. City of Omaha*, 623 F.3d 587, 591 (8th Cir. 2010) (quoting another source); *see also Barker v. Mo. Dep't of Corrs.*, 513 F.3d 831, 834 (8th Cir. 2008). "A plaintiff must show that the protected conduct was a determinative factor in the employer's materially adverse employment action." *Alvarez*, 626 F.3d at 416.

"To defeat summary judgment on a retaliation claim, a plaintiff must produce either direct evidence of retaliation, or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted). "Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 68 (2006)); *see also Torgerson*, 2011 WL 2135636, at *8, 17 (discussing direct evidence in the context of a discrimination claim).

Here, Pye has produced sufficient direct evidence of retaliation to defeat summary judgment. Under this Circuit's precedents, Pye's filing of the internal discrimination complaint qualifies as protected conduct. *See, e.g.*, *Helton v. Southland Racing Corp.*, 600 F.3d 954, 961 (8th Cir. 2010) (holding that reporting alleged harassment was protected conduct for purposes of a retaliation claim, where alleged harassment did not itself constitute an actionable wrong). Substantial questions of fact exist regarding what Pye said to Johnson during the investigation. Accepting Pye's version of what was said at the November 15, 2007 meeting, his comments at the meeting would also have been protected conduct. *See Gilooly v. Mo. Dep't. of Health & Senior Servs.*, 421 F.3d 734, 740 (8th Cir. 2005) (holding that an employee's

statements during the investigation of his charge of discrimination that are related to the substance of the investigation are within the scope of protected activity). Pye's termination was clearly an adverse employment action.

That leaves the question of whether Pye offered sufficient evidence of a causal link between his protected conduct and his termination to preclude summary judgment in NuAire's favor. We conclude that he has. There is no evidence that NuAire had any concerns regarding Pye's performance before he engaged in protected conduct. Indeed, Peters acknowledged that he had no information regarding Pye's work performance when he made the decision to terminate him. Further, viewed in the light most favorable to Pye, the evidence shows that his termination was a direct result of his complaint of discrimination and his suggestions of remedies, prompted by the investigator's questions. *See Young-Losee*, 631 F.3d at 912-13 (reversing grant of summary judgment to employer where employee presented direct evidence of retaliation).

The same result is reached under the *McDonnell Douglas* burden-shifting framework. Under this framework, an employee has the initial burden of establishing a prima facie case of retaliation by showing that (1) he engaged in protected conduct, (2) he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct. *Fercello*, 612 F.3d at 1077-78. "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action"; if the employer does so, the burden then shifts back to the employee to put forth evidence of pretext, "the ultimate question being whether a 'prohibited reason, rather than the proffered reason, actually motivated the employer's action.'" *Id.*; *see also Fairview Ridges Hosp.*, 625 F.3d at 1087 (citations omitted).

"An employee can prove that [his] employer's articulated justification for an adverse employment action is pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010) (quoting *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 872 (8th Cir. 2009)). "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." *Torgerson*, 2011 WL 2135636, at *12.

On appeal, NuAire contends that Pye did not establish a prima facie case of retaliation because Pye's report of discriminatory behavior was not made in good faith and therefore cannot qualify as protected conduct. NuAire asserts that contrary to Pye's complaint that Holladay caused him to lose the housing assistance, Pye did not qualify for the assistance, and further contends that in connection with his application for assistance, Pye submitted a fraudulent document to the county, falsely stating the amount he was paying in rent and identifying his mother as his landlord. From the record, however, it appears that the document NuAire references was submitted after the October 30, 2007 encounters with Holladay. It has little relation to the complaint Pye made to his employer that Holladay repeatedly failed to complete the employment verification form, though she routinely completed such forms for others, called the form "dumb," and referred to him, using a racial slur. Further, the record does not reflect that either Johnson or Peters was aware of this document at the time Pye was fired, and they did not offer it as a reason for his termination. Even assuming some relevance, at best this evidence gives rise to a question of fact for determination by the jury.

Thus, the Court concludes that Pye presented sufficient evidence to establish the first element of a prima facie case of retaliation. There is no question with regard to the second element. The third element was also established, given the very reasons

-13-

offered for the termination, and the temporal proximity of the protected conduct and the termination. *See, e.g., Wierman*, 2011 WL 1166706, at *13 (holding that the plaintiff's evidence that she was fired within a week of engaging in protected conduct established a causal connection for a prima case of retaliation); *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011) (noting that in cases where the temporal proximity "is very close," a plaintiff can "rest on it exclusively" for purposes of establishing a prima facie case); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001) (noting that a "matter of weeks" between a protected activity and an adverse employment action was sufficient to satisfy the causation element of a prima facie case of retaliation).[6]

NuAire also argues that, even if Pye satisfied the requirements of a prima facie case, it is entitled to summary judgment because the trial court correctly found that NuAire had articulated a legitimate, nondiscriminatory reason for terminating Pye and that Pye had failed to show that the reason was pretext.

As the district court noted, this Court has recognized that "[a] proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). The honest belief

---

[6] In its appellate brief, NuAire argues that the causal connection between Pye's protected conduct and his termination was broken by Pye's misconduct at the November 15, 2007 meeting. This is essentially a pretext argument, and fails at the summary judgment stage of the case, where, as noted above, we must accept Pye's version of what transpired at that meeting. *See Gilooly*, 421 F. 3d at 743 (dissent) (agreeing with the majority that "if the employer has no good reason to conclude that the employee's allegations were knowingly false and malicious" -- the stated reason for the termination -- there will be a genuine issue of fact as to whether the employer's stated reason is pretext.)

-14-

doctrine typically applies, however, when the employer raises a ground for termination unrelated to the protected conduct at issue. In *Twymon,* the employer proffered evidence that the plaintiff had been terminated for gross violation of the company's computer policy. *Id.* at 935, 936. Likewise, in *Macias Soto v. Core-Mark Int'l*, 821 F.3d 837, 842 (8th Cir. 2008), cited by NuAire during oral argument, the employer asserted that it had terminated the employee based on its honest belief that the employee had been sleeping on the job. The cases cited by NuAire in its brief are similar. *See, e.g.*, *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769-770 (8th Cir. 2008) (affirming summary judgment on ADA claim where employer honestly believed employee had been sleeping on the job in violation of company policy); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (affirming summary judgment where employee failed to rebut employer's honest belief that employee, who had previously been disciplined, had taken an unauthorized break).

In this case, the proffered reason for termination is inextricably intertwined with the protected conduct at issue. Based on the record as a whole, including the facts and circumstances of the investigation conducted by Johnson, a jury could believe Pye's version of what transpired at the November 15, 2007 meeting, and could further believe that NuAire's assertions of intimidation, coercion, and threatening behavior were pretext for -- if not further evidence of -- NuAire's true prohibited reason for Pye's termination. Moreover, Pye has denied making the comments which Johnson asserts he made. If we assume that Pye did not make the statements asserted by Johnson, a reasonable jury could find that Pye engaged in nothing more than reasonable, good faith opposition to unlawful practices, and find NuAire's explanation for Pye's termination to be "unworthy of credence."

Under the unique circumstances of this case, we hold that it is for the jury to decide what statements were made during the November 17, 2007 meeting, and whether NuAire's response constitutes retaliation for Pye's protected conduct, or an

-15-

honestly held belief that Pye engaged in "extortion." *See Gilooly*, 421 F.3d at 740-41 (reversing summary judgment in employer's favor where the decision to fire the plaintiff, who had filed an internal charge of discrimination, was based on the investigator's belief that the plaintiff had lied about the substance of the charge during the investigation; whether the plaintiff had lied was an issue of fact for the jury).

V.

In conclusion, the judgment of the district court is reversed and remanded with regard to Plaintiff's retaliation claim under Title VII and the MHRA, and affirmed with regard to Plaintiff's remaining claims. On remand, the district court may address the question of exhaustion of administrative remedies.

---