# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2182
_____

Albert N. Collins, Jr.

*Plaintiff - Appellant*

v.

Kansas City Missouri Public School District

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 9, 2024
Filed: February 12, 2024
_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After the Kansas City Missouri Public School District terminated Albert Collins's employment, he sued the school district, claiming that it had discriminated against him because he is black and because he engaged in protected activities. The

school district successfully moved the district court[1] for summary judgment in its favor, and Collins appeals. Reviewing the court's decision de novo, *see Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 936 (8th Cir. 2019), we affirm.

Collins had been employed in various positions at the school district for about a decade, and, at the time relevant here, he was an "attendance ambassador." He reported directly to Samuel Johnson, whom Collins characterized as his longtime friend. Johnson later left the school district and reported to state education authorities that the school district had engaged in "attendance fraud." To support his allegations, Johnson supplied the authorities with information that Collins had provided him. The school district hired a third party to investigate the allegations, and once that investigation was complete, the school district fired Collins.

Collins admits that he participated in the fraud. Emails sent between Johnson's and Collins's personal accounts reveal that Johnson provided Collins with lists of students whose attendance records he would change at home from his personal computer without supporting documentation. To illustrate, one day Johnson sent Collins an email titled "Lets work my brother" in which he asked Collins to "move 50–70 a day" and said that "if you could move about 50 up tonight . . . that would be great." So Collins did so. That particular day was no aberration. Collins testified that he regularly altered attendance records until "they hit whatever mark they needed to hit," and he admitted that he decided which students' records to alter from the provided lists. Collins never questioned Johnson's directives or refused to follow them.

In his complaint, Collins raised numerous claims against the school district arising out of his termination, but only three remain relevant. The first is a claim that

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

the school district discriminated against him on the basis of race when it terminated him, in violation of Title VII (42 U.S.C. § 2000e-2(a)(1)) and 42 U.S.C. § 1983. The second is that the school district retaliated against him for engaging in activities protected under Title VII (42 U.S.C. § 2000e-3(a)) and § 1983. Finally, Collins complains that the school district violated a state law that prohibits public employers from retaliating against whistleblowers. *See* Mo. Rev. Stat. § 105.055.3(1).

Collins maintains that the district court erred in granting summary judgment to the school district on his race-discrimination claim. Summary judgment is appropriate where the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Title VII prohibits employers from discriminating against employees on the basis of race, *see* 42 U.S.C. § 2000e-2(a)(1), and § 1983 subjects to suit anyone acting under color of state law who deprives someone of a right secured by federal law. Collins has no direct evidence of racial discrimination. He does not point to any record evidence showing that the two people responsible for terminating him—Human Resources Director Jennifer Collier and Employee Relations Director Marilyn Overton—ever said anything to suggest that Collins's race motivated their decision to terminate him.

To succeed on his claim under both Title VII and § 1983 without direct evidence of discrimination, Collins must first establish a prima facie case of discrimination, which means that he must show that the circumstances of the case give rise to an inference of racial discrimination. *See Beasley*, 933 F.3d at 937; *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013). If he establishes a prima facie case, then the school district must articulate a legitimate, nondiscriminatory reason for Collins's termination. *See id.* The school district here identified Collins's participation in attendance fraud as that reason, which we believe is a manifestly sufficient reason for terminating him. To prevail, Collins must show that the school district's reason was a pretext for unlawful discrimination. *See id.* We

will assume that Collins has established a prima facie case and so consider whether he has demonstrated pretext. *See Onyiah v. St. Cloud St. Univ.*, 684 F.3d 711, 716 (8th Cir. 2012).

We agree with the district court that Collins hasn't done so. He attempts to demonstrate pretext by arguing that a white employee named Rick Bishop participated in the scheme and yet was not terminated. We've recognized that "[a] common approach" for showing that an employer's claimed reason for termination is a pretext for unlawful discrimination "is to introduce evidence that the employer treated similarly-situated employees in a disparate manner." *See Beasley*, 933 F.3d at 938. But the plaintiff must show that the two "were similarly situated in all relevant respects," which is a showing we've described as "rigorous." *See id.* That means that they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *See id.*

The district court correctly held that Collins and Bishop were not similarly situated enough to permit a reasonable jury to find that race motivated the school district's decision. Bishop worked in the school district's IT department and reported to a different supervisor from Collins's. Though Collins says that he had to work with IT staff as part of his job and "had to go through Bishop to get things to perform his duties," that's a far cry from stating that he and Bishop "dealt with the same supervisor" or were "subject to the same standards." *See id.* Collins also told the district court "that he and Bishop worked closely together in the same department," but the court was right to conclude that no reasonable juror could agree since Collins admitted in his deposition that he wasn't a member of the IT department at the relevant time, could not provide the names of IT employees other than Bishop, and could not recall ever attending an IT department meeting.

It is unclear, moreover, whether Bishop engaged in the same conduct as Collins. Collins implicates Bishop in the attendance fraud but never explains specifically what Bishop did to further it. He testified at his deposition that Bishop "was in the same knowledge" and "gave us access to do the corrections in attendance audits that we did." But it's uncertain what Collins meant by this, and he offers no explanations or evidence to support his assertion that Bishop knowingly participated in the scheme, as opposed to unknowingly helping provide the digital means by which Johnson and Collins could commit the fraud. Collins also testified that "[a]s far as I know he was the one that we had to get the reports from." Again, Collins's meaning is unclear. He admitted, though, that he did not know whether "Bishop was tasked with changing individual scores on various students and then putting that information in the way" Collins did. The shortcomings in the record fall on Collins because he bears the burden of demonstrating that Bishop is similarly situated in all relevant respects. *See Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). We don't think he has carried that burden.

In another apparent attempt to demonstrate pretext, Collins says that he and a black secretary were singled out for discipline and termination for their roles in the fraud. We disagree. As an initial matter, Collins admitted at his deposition that he doesn't know if the school district terminated the secretary for participating in attendance fraud or for something else altogether. But even if her termination stemmed from her participation in the fraud, Collins still hasn't shown that the school district treated any similarly situated non-black employee more favorably than the two of them, so he hasn't demonstrated that the school district actually singled them out.

We've already held that Collins failed to show that the one comparator Collins names—Bishop—was similarly situated to him. Though Collins doesn't name other potential comparators, he does allude to some. He observes that he and the secretary were the only employees of seven allegedly involved in the fraud who were terminated. In support of this observation, Collins refers us to testimony that Collier

gave in another case. Assuming that we should consider that testimony, Collier made it clear in that testimony that the school district no longer employs the other alleged participants, most of whom are white. Collins points out that the school district allowed these other employees to resign in lieu of termination. Collier's testimony reveals that is true for some of these employees, though others had already left the school district by the time the investigation into attendance fraud was complete. Regardless, even if we accept that forcing someone to resign in lieu of termination is materially different from outright termination and that Collins was not also afforded the same choice, those employees afforded that choice were executive-level employees, and Collins has failed to demonstrate that they answered to the same supervisor as he. So they too are not similarly situated.

In sum, we are satisfied that Collins has failed to provide enough evidence for a reasonable jury to conclude that his termination was motivated by his race or had anything to do with it. Collins may well believe that his termination was unfair or disproportionate, but that's insufficient to succeed on his claim under Title VII and § 1983. *See Beasley*, 933 F.3d at 939. We hold that the court properly granted summary judgment to the school district on his discrimination claim.

Collins's retaliation claim also fails. An employer may not discriminate against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *See* 42 U.S.C. § 2000e-3(a). To make out a prima facie case of retaliation, Collins must present evidence that raises an inference that his termination "was causally linked to" his protected conduct. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011).

Collins doesn't clearly identify what he believes was the protected conduct he engaged in. At times he suggests that it was giving interviews to the school district and the third-party investigator about the attendance-fraud scheme. But Collins

doesn't explain how those interviews had anything to do with race. In fact, he admitted at his deposition that the investigation was about attendance fraud and "was not an investigation for race discrimination." Additionally, he told the Equal Employment Opportunity Commission after his termination that the school district retaliated against him "because of the information I possess." When asked to clarify at his deposition, he said it was "for having the—the attendance names." The upshot of all this is that he thought the school district retaliated against him not because he engaged in protected activity but because of his knowledge of and participation in attendance fraud, or perhaps because he helped make it known to others.

At other times Collins suggests that his protected activity was acting as a witness for Johnson in claims he had brought against the school district. But as the school district points out, Collins hasn't demonstrated that Johnson's claims had anything to do with race. Collins affirmed at oral argument that he was adverting to a specific complaint that Johnson had levied against the school district, but that complaint doesn't raise allegations of racial discrimination or retaliation. And though the word "retaliation" appears in that complaint as Collins says, Johnson was complaining of the school district's alleged retaliation against him as a whistleblower, not as someone who had participated in protected activity that concerns Title VII or § 1983. So the district court did not err in granting summary judgment on this claim either.

Finally, Collins appeals from the grant of summary judgment on his state-law whistleblower claim. Missouri law prohibits a public employer from disciplining an employee for disclosing activities that the employee reasonably believes are a violation of law, mismanagement, a gross waste of funds, or an abuse of authority. *See* Mo. Rev. Stat. § 105.055.3(1). But that law specifically excludes from its protection a disclosure that "relates to the employee's own violations," *see id.* § 105.055.4(4), and the district court held that this exclusion applied.

-7-

On appeal, Collins resists the court's grant of summary judgment on this claim, but he fails to address the court's holding that the statutory exclusion applied. He instead raises other matters that the parties raised below, such as whether Collins could have "disclosed" something that the school district already knew or whether he could make a disclosure to a fellow wrongdoer. But Collins doesn't contest the district court's holding that he can't take advantage of the whistleblower statute because the information he shared related to his own misconduct. Since Collins failed to offer some "meaningful argument" that the court erred in applying the statutory exclusion, we deem his challenge to the court's grant of summary judgment on his whistleblower claim waived. *See Liscomb v. Boyce*, 954 F.3d 1151, 1154 (8th Cir. 2020).

Affirmed.

_____